## Case No. 11,742.

### The RHODE ISLAND.

### [8 Ben. 50.] [1]

District Court, S. D. New York.   Feb., 1875.

SHIPPING—DAMAGE BY SWELL FROM A STEAMBOAT
—SPEED—COSTS.

2. In respect to a demand of such a character, prompt notice should be given, and the court would mark its disapproval of the libellant's course by refusing costs to him, and giving costs to the claimants to be deducted from the libellant's damages.

[Cited in The Florence P. Hall, 14 Fed. 419.]

In admiralty.

## Case No. 11,743.

### The RHODE ISLAND.

### [1 Blatchf. 363; [1] 7 N. Y. Leg. Obs. 38.]

Circuit Court, S. D. New York.   Oct. Term.
1848. [2]

COLLISION—DANGER—ATTEMPT TO PASS—HELL
GATE.

1. Where one vessel attempted to pass another under circumstances where it could not be done without imminent danger of a collision, and there was no fault in the latter vessel, and a collision ensued: *Held*, that the former vessel was liable for the damages done to the latter by the collision.

[Cited in The Empire State, Case No. 4,475.]

2. A vessel that attempts to pass another while struggling in Hell Gate, there being no fault on the part of the latter, will be responsible if a collision occurs.

[Cited in The Empire State, Case No. 4,475; Whitridge v. Dill, 23 How. (64 U. S.) 454; The City of Macon, 47 Fed. 925.]

[Cited in brief in Austin v. New Jersey Steamboat Co., 43 N. Y. 79.]

[3] [New allegations were filed in the circuit court in behalf of the appellants, for the purpose of bringing under consideration material testimony showing bad navigation by the propeller, which was supposed not to

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 11,745.]
[3] [From 7 N. Y. Leg. Obs. 38.]

have been allowed weight in the district court, for the reason that the answer was held not to be specific enough to admit of its application. (See opinion of district court, Case No. 11,745.) The collision in question took place during daylight, about abreast of Hallett's Point, between the Point and Hogsback, and nearer the former than the latter. The tide was at its strongest ebb; both boats were from New York, bound to the eastward. While the Rhode Island was passing Flood Rock, the propeller had taken her sheer off the Point, about midway across, and was taking a direction to the southward of the Pot, with the tide on her larboard and sagging her to the southward. The Rhode Island struck the tide at Hallett's Point, and was carried off to the northward, so as to bring her into the propeller a little abaft of midships. As soon as the Rhode Island struck the tide, her engine was slowed and stopped; and when striking the propeller, it was at rest and she beginning to straighten in the tide.

[The case came up on cross appeals. The libellants appealing from the decree below, as to the disallowance of certain damages, (which yet remains open.) The claimants appealing generally. For the libellant it was contended: (1) That the propeller was in her usual course, and being the head boat, was not bound to notice a boat coming behind. (2) That if there was not room for the Rhode Island to pass without requiring the propeller to do anything, then the Rhode Island had no right to pass. (3) If room, then the collision must have been caused by faulty navigation of the Rhode Island, for the propeller did nothing. (4) If the propeller was bound to have done something to avoid a collision, it was not until the last moment, and if then in the hurry of the emergency, she omitted doing what might have prevented the collision, the omission was caused by the improper navigation of the Rhode Island, which put her in a position where no sufficient time was afforded. (5) That the proof did not make out a usage for propellers, of her power and size, to navigate to the north shore, but the reverse. (6) If such usage did exist, the Rhode Island saw that the propeller was departing from it, and was bound to have stopped or slowed sooner, to have let the propeller go through. (7) That if the Rhode Island could not have slowed or stopped with safety after passing Flood Rock, she should have done so before reaching there.

[The following authorities were cited for the libellant. The Girolamo, 3 Hagg. Adm. 176; The Protector, 1 W. Rob. Adm. 45; 3 Kent, Comm. 230, 233; The Neptune, 1 Dod. 467; The James Watt, 2 W. Rob. Adm. 270; Pard. Droit Commer. tome 3, p. 95, § 653; Emerig. Ch. 12.

[The following points were made for the Rhode Island:

[That the court would notice judicially and under the proofs, that the passage of Hell Gate constituted waters of the United States, was a public thoroughfare of a peculiar and extraordinary character, and to be navigated upon the understanding, that all general rules are to give way under its emergencies, and wherein mutual accommodation always has been the great law. That it was very questionable, whether it was within the power of the state to prescribe regulations for its navigation. That the state law being adapted to ordinary river navigation, had no direct application to this passage; yet might be noticed as suggesting a navigation which condemns the propeller in the broad assertion, that she was navigated wholly irrespective of the fact, whether she was unnecessarily obstructing the Rhode Island, and "paid no attention to her." U. S. v. Jackson [Case No. 15,458]; 1 Rev. St. N. Y. (3d Ed.) p. 86. That all vessels have the right to use this passage by going through. None have the right to obstruct it by unnecessarily anchoring, or in any other way impeding the public the right of passing through. Strout v. Foster, 1 How. [42 U. S.] 92. That all vessels entering upon the navigation of Hell Gate are bound to the observance of the rule of "mutual accommodation;" that the right of the public being to pass through, not to stop or obstruct the passing of others—any vessel voluntarily coming into the Gate, with power inadequate for contending with the tide, is bound to use extraordinary care and precaution in the observance of the rule. That the libel places the right to recover upon the grounds: (1) That the propeller was on her usual and lawful course. (2) That this course left the Rhode Island room to pass her. (3) That the Rhode Island had the right to pass through at the time she attempted to do so, and had power and way enough for the purpose. (4) That the collision was caused by the Rhode Island not using properly the facilities afforded her. That on the proofs it appeared, that the propeller came into the Gate with power inadequate for passing through, that she was "hanging" in the Gate, and although making little headway, she was perfectly manageable so as to be able with ease and safety to sagg from side to side of the passage, and leave it open for other steamboats passing through. That during similar states of the tide, propellers of her power, had navigated in this manner until the tide slackened sufficiently to enable them to go through. That under the proofs it was not pretended that any navigation of the propeller would have left room for the Rhode Island to have passed her, on the north or larboard side; but that the navigation of the propeller towards the south or nearer the south than the north shore, did not leave room enough for the Rhode Island to pass her, on her right or starboard side. That the case set up by the libel was not made out by the proofs, and inasmuch as the libel had conceded the right of the Rhode Island to pass, and averred that room had been af-

forded, it could not afterwards be set up, that the Rhode Island had no right to pass, because there was not room enough, or that she was bound to have stopped below and waited, &c. That the decree must be "secundum allegata et probata." That it is a well settled rule of admiralty courts, both in England and this country, that to recover entire damages for a collision, it must appear by a preponderance of testimony, that the same was occasioned without fault on the part of the libellant, but through fault on the part of the vessel charged.

[If it appear that the libelling vessel committed a fault, her claim to entire damage fails; or if the testimony is equally balanced, the libel will be dismissed. The Ligo, 2 Hagg. Adm. 360; The Catherine of Dover, Id. 154; The Emily [Cases Nos. 4,452, 4,453] (United States district and circuit courts of New York, on appeal); Hinckley v. The Northumberland, Id. 6,511] (United States district court, 1847); Waring v. Clarke, 5 How. [46 U. S.] 501. That in a court of common law, whenever the evidence discloses fault on the part of the plaintiff, suing for damages caused by a collision, the plaintiff will be nonsuited. In admiralty, however, he is permitted "ex equitate," to proceed further, and if able to prove culpable fault on the defending vessel an apportionment of the damages may be obtained. Thain v. The North America [Case No. 13,853]; The Bay State [Id. 1,-148]; The Monarch, 1 W. Rob. Adm. 26; Strout v. Foster, 1 How. [42 U. S.] 92. That the clear preponderating weight of evidence fixed upon the propeller the fault which caused the collision, viz: after having broken her sheer, and obtained full and perfect command of herself, her helm was deliberately ported, so as to bring the tide on her larboard bow, which sagged her towards the south, at a time when she knew that the Rhode Island was under full headway, had passed or was passing Flood Rock, and within thirty seconds must take a sheer at Hallett's Point, within the probable scope of which those in the propeller admit they knew they must bring themselves, if continuing their course. It being admitted by the libellants that they were aware of the approach and passing of them by the Rhode Island, the ground contended for obviously is, that they claim the right to navigate, under the circumstances in question, as though the Rhode Island had not been in the Gate at all —in other words, that the public was bound to know the usual course of the Naugatuck, and so to navigate Hell Gate, when she was in it, as not to require her to do any thing towards leaving the passage open, or they to keep out of the Gate until she was through. That the proofs show that the course assumed by the propeller when porting her helm, tended effectually to close the passage, and involves, if the court sustain the grounds assumed by them, that with half of the channel open to them on the north, they yet have the right to occupy a portion of the south, beyond the line of the middle, and thus gradually shut the south passage to boats which can only take this passage from the necessities incident to, and inseparable from the navigation.

[Taken in connection with the ground contended for by the libellants' counsel in the court below, that the propeller was nearly at a dead stand still, "hanging in the Gate," this claim then rests substantially upon the extraordinary assumption, of the right to anchor in, and obstruct this notoriously dangerous and narrow public passage, clearly within the principles of the case of Strout v. Foster, 1 How. [42 U. S.] 92. That the allegations of the libel in connexion with the proofs show, that with admitted inability to pass through, they place themselves upon the legal right to have done nothing. That the case on the part of the libellants rested upon the assumption, that they were required to do nothing, and that the Rhode Island was bound to do everything, and also to have exercised something like prophetic sagacity in guarding against the possibility of finding the Naugatuck in the Gate, and to anticipate that she would port her helm and sagg towards Hallett's Point, while she, the Rhode Island, was between Flood Rock and the Point. That the clear weight of evidence demonstrated that it was in the power of the propeller, to have done every thing effectual for avoiding the collision. That this could have been done with perfect safety and ease to herself, and really without any loss of time, (if time was an object). That the necessity of doing something, was seen by them abundantly early for the purpose of acting properly. That it also appeared by the weight of evidence on both sides, that the larger is the most helpless of the two boats, and cannot with safety sagg from side to side, and is limited to one mode of passing through this part of the Gate. That the law of Hell Gate, "mutual accommodation," was alone compatible with its safe navigation, and but for its adoption thousands of collisions would have occurred, and to shake its observance now would be disastrous to the public interests, and to life and property. That great care and skill were applied in the navigation of the Rhode Island. Opinion of district court [Case No. 11,745]. And the clear weight of the testimony of pilots of steamboats, and competent masters showed that if on board they would have navigated her precisely as was done. That the usual and proper course for propellers going through Hell Gate, on ebb tide, after striking tide at Hallett's Point, was on the north side or shore. That the Naugatuck at the time of collision was not on such usual and proper course, but about abreast of Hallett's Point, and had edged over nearer to the south than the north shore, heading south of Pot Rock, intending to take, and in a direction to take, the south shore inside of Pot Rock. That the

invariable and only proper and safe course for large steamboats on ebb tide is to pass near Flood Rock, and then, turning so as to head the tide, shave Hallett's Point as close as possible in a direction to northward of Pot Rock. That the Rhode Island, on the occasion in question, was taking such invariable course, and was being successfully navigated on such course. The master, first and second mate, and wheelman being at the wheel together engaged in steering the vessel, and looking out for vessels or other obstructions. That the libellants were estopped by their own allegation in the libel, (article 6.) "that she had room enough and might have cleared the Naugatuck, and passed her without injury," from imputing any blame or fault to the Rhode Island in attempting to pass the Naugatuck, especially as it was alleged by the libel, that the attempt was made under favorable circumstances, such as "a sufficient head of steam, good headway," &c. That the Rhode Island was entirely justifiable in proceeding on her way through the Gate. Because, until after passing Flood Rock, the Naugatuck appeared to be (as she was supposed to be by those on the Rhode Island) in the usual course of propellers, going through on the north side. That the Rhode Island had a right to calculate upon her taking such course, from the known custom of propellers, and further, that when the Naugatuck found the steamboat approaching her, those on board of her knowing the course of steamboats, would so direct their boat as to allow the Rhode Island to pass on the only side proper for her to pass.

[From the evidence, no prudent or discreet master of steamboat would, under the circumstances, have felt himself bound to consider the Naugatuck an obstruction or obstacle in the way, nor would he have apprehended a collision with her until after he had struck the tide at Hallett's Point. That after having passed Flood Rock, and when between that and Hallett's Point, it was first discovered that propeller was sagging to southward, the navigation adopted on board the Rhode Island was such as a skilful and competent master would have pursued. That she went as close to Hallett's Point as she had ever been, and "closer than it is considered safe to navigate with boats of her size." To have attempted passing to northward of Naugatuck would have involved such imminent danger to Rhode Island as only to be ventured in the last extremity;—to have turned round, would have been at that time and in her then position, a most dangerous experiment, and would have, in addition involved the danger of a collision. To stop or slow the boat before striking the tide, would, according to the weight of testimony, have been an experiment never resorted to, and of a most doubtful and dangerous character. That it was established by their own witnesses, that the Naugatuck was under perfect command, so far as to be able to alter

her course, to the north or south, at pleasure; that she had broken her sheer after striking the tide, and that nothing but the will of those on board of her prevented her from sagging to northward and leaving the passage open to the Rhode Island. That the Rhode Island claimed only the right to pass through Hell Gate in common with other vessels; but that right of passage, owing to the difficulties of the navigation, must be exercised, as is notorious to all, in a particular manner, or it does not exist; and the strait is effectually barred and closed to her and other vessels of her class. That those navigating the Naugatuck, if possessing the competent skill, were bound to know that there was but one course for the Rhode Island to take in passing; and if they have the right to sagg over to the south at the time and in the manner it was attempted, with their propeller at a stand still, or nearly so, on the ground that they had a right to navigate as they pleased, irrespective of other vessels; it amounted to claiming the right of stopping the passage of boats of the class of the Rhode Island, for so long a space as the Naugatuck's want of power might make her stationary in the tide way. That this right was denied; and on the contrary it was submitted that, where a vessel from defect of power is liable to be brought to a stand still, in a dangerous and narrow passage, so as to impair, hinder or obstruct the right of passage enjoyed by other vessels in common with herself, the burthen is imposed of exercising special care and vigilance in avoiding other vessels following her, and that when, as in this case, a course is open to her, which is usually adopted by vessels of her class, and by which all danger is avoided, she is bound to take such usual course. That the libellants allege that they were bound to do nothing, and do not set up in their libel that they did anything. They moreover prove on the hearing that they apprehended a collision some time before it took place. Yet under these circumstances refusing to do anything till it was too late to aid the other in avoiding them, and standing upon what they imagined to be their strict legal rights, at such a time and place, they actually invited a collision.] [3]

Francis B. Cutting and Edward H. Owen, for libellants.

Washington Q. Morton and Alexander Hamilton, Jr., for claimants.

NELSON, Circuit Justice. This is a libel against the steamboat Rhode Island for damages done to the propeller Naugatuck by a collision between the two vessels, which occurred in Hell Gate on the 28th of October, 1846, between four and five o'clock p. m.

The preponderance of the testimony is that the Rhode Island was in fault in attempting to pass the Naugatuck in the Gate, considering the position of the latter at the time

[3] [From 7 N. Y. Leg. Obs. 38.]

and the course she was pursuing through that narrow and dangerous passage. Notwithstanding some evidence to the contrary, the weight of it is not to be mistaken, that the Naugatuck was in her usual course, and not only so, but as nearly as practicable in the usual course taken by vessels of her size and power in passing the Gate, that is, heading towards the Pot. Some pass south of it and some north. In this instance, the Naugatuck was heading a little to the south of it, and intended, apparently, to take that course. But it makes no difference which side of it she intended to pass. She had just straightened up in the stream after a rank sheer on encountering the force of the ebb tide in doubling Hallett's Point, and was in about the middle of the channel. Under the circumstances, the Rhode Island was clearly in the wrong in attempting to pass her, as, upon all the evidence, it could not be done without imminent danger of a collision. The proof shows that the Rhode Island, in doubling Hallett's Point in the then state of the tide, always sheers to about the middle of the channel between that Point and the Hog's Back, which would, of necessity, or at least in all probability, produce the disaster that actually happened.

The pretence set up for exposing the Naugatuck to this peril is, that to have slowed or stopped the Rhode Island after she had passed Flood Rock would have greatly endangered her safety and the lives of her passengers. If this be admitted, the answer is, that she was brought into the dilemma through her own fault. She saw the Naugatuck in season to have avoided the difficulty, and, not having avoided it, she must be subjected to all the consequences that followed.

Indeed, upon the evidence, I should feel bound to hold any vessel responsible for a collision that occurs in her attempt to pass another while struggling in that dangerous strait, there being no fault on the part of the latter. Decree affirmed.

[NOTE. The cause again came before the district court on exceptions to the commissioner's report made in conformity with the order of the court in Case No. 11,745. The exceptions were overruled, except as to the award of compensation. Id. 11,740a. An appeal was then taken to the circuit court, where the decree of the district court was affirmed. Id. 11,744.]